UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INSTAGRAM, LLC, et al.,

          Plaintiffs,

     v.

INSTASIZE, INC.,

          Defendant.

Case No.  21-mc-80298-AGT

**ORDER GRANTING IN PART MOTION TO QUASH AND DENYING MOTION TO STRIKE**

Re: Dkt. Nos. 1, 8

Kevin Systrom, a co-founder of Instagram who's no longer with the company, has moved to quash a subpoena served on him by Instasize.  The subpoena seeks testimony from Systrom for use before the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office.  There, Instagram is opposing Instasize's trademark application on grounds that Instasize's mark is deceptively similar to Instagram's and likely to cause confusion.  Systrom, here,[1] argues that Instasize's subpoena doesn't seek relevant information and should be quashed.

Four of the six noticed topics seek testimony from Systrom about the origins of Instagram's mark (topics 1–3 & 6).  Those origins are, for the most part, irrelevant to the TTAB proceedings.  This is because how an opposer's trademark "came to be adopted" is generally "immaterial to the issue [of] whether confusion [with an applicant's mark] is likely."  *Hercules Inc. v. Nat'l Starch & Chem. Corp.*, 223 U.S.P.Q. 1244, 1984 WL 63608, at *4 (TTAB 1984).

The TTAB has identified a possible exception, implicated when the public is familiar with the origin stories of competing marks, and that knowledge affects how the public perceives—and perhaps differentiates—the marks.  *See id.* (suggesting that "evidence establishing that purchasers

---

[1] This is the "district where compliance [with the subpoena] is required."  Fed. R. Civ. P. 45(d)(3)(A).  *See* Dkt. 1 at 19.

would be aware of the term or terms from which the marks were derived" may be relevant to a likelihood-of-confusion claim).  Some evidence of such public knowledge is present here.  In response to Instasize's interrogatories, Instagram noted that in 2010 Systrom posted on the online platform Quora about how the name Instagram was chosen.  *See* Dkt. 1 at 26–27 (interrogatory responses); Dkt. 3-5 (copy of post).  Whether that post was read by enough people to affect how the public perceives Instagram's mark isn't clear.  But Instasize should at least be able to ask Systrom about his Quora comments in an effort to develop this public-perception theory.  The Court will allow Instasize to ask Systrom about his Quora post (topic 6), but the questions must be reasonably tethered to the post.  The post doesn't open the door to more in-depth questioning about the origins of Instagram's mark (topics 1–3).

The two other noticed topics are Systrom's "knowledge and understanding of the branding policies at Instagram prior to 2012," and his "duties and responsibilities at Instagram prior to 2012."  Dkt. 1 at 22 (topics 4 and 5).  Systrom doesn't dispute that before 2012 Instagram was a small company, perhaps with as few as thirteen employees, and that he was involved then in decision-making about the company's branding.  *See* Dkt. 3 at 12.  He also doesn't dispute that before July 2012, Instagram had a branding policy that "let developers who wished to integrate their apps with the Instagram platform know that they could use the 'Insta' prefix in their product names."  Dkt. 1-13, Newton Decl. ¶ 4.

This past policy, which may have resulted in other companies adopting "Insta" prefixed names, is relevant to the strength of Instagram's mark, and Instasize reasonably wants to ask Systrom about the policy.  True, as Systrom notes, the strength of a mark is generally determined "at the time of trial," not years before.  *Eataly S.r.l. v. Eatelli Inc.*, No. 91233641, 2018 WL 3694164, at *5 (TTAB Aug. 2, 2018).  But Systrom admits that "past fame or strength is [also] relevant" to a likelihood-of-confusion claim. Dkt. 1 at 15 (citing *Valentino U.S.A., Inc. v. Florence Fashions (Jersey) Ltd.*, No. 91094961, 2010 WL 2783891, at *11 (TTAB June 25, 2010)).  Because the pre-2012 branding policy is relevant, Instasize may ask Systrom about it (topic 4).  For context, Instasize may also ask Systrom about his "duties and responsibilities at Instagram

prior to 2012," (topic 5), a topic that shouldn't take much time to address.

Systrom argues that the deposition will be burdensome, but the only reason he gives is that a deposition on irrelevant topics is per se unduly burdensome. *See* Dkt. 1 at 9, 12, 16. Finding that several topics aren't irrelevant, the Court rejects this argument.

Instasize argues that Systrom's motion to quash is untimely because Systrom filed it four days after the noticed deposition date. *See* Dkt. 3 at 6–7. The Court concludes otherwise. Systrom served formal objections to the subpoena before the noticed date, and those objections put Instasize on notice of a dispute and resulted in Instasize acknowledging, in an email to Systrom, that the originally noticed date wouldn't work. *See* Dkt. 1-4, 1-5, 1-6. The noticed date was thus effectively vacated, and Systrom won't be penalized for filing his motion several days after it.

In conclusion, Instasize may depose Systrom, but questions will be permitted only on topics 4 through 6. The deposition will also be limited to 90 minutes.[2]

**IT IS SO ORDERED.**

Dated: February 1, 2022

Alex G. Tse
United States Magistrate Judge

---

[2] Instasize's motion to strike portions of Systrom's reply is denied, but the Court grants Instasize's alternative request to file a sur-reply, a copy of which Instasize filed and the Court considered. *See* Dkt. 8-1.